**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **SOUTHERN STAR CENTRAL** ) | |
| **GAS PIPELINE, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| **v.** ) | **Case No. 10-2233-JAR/DJW** |
| ) | |
| ) | |
| **PHILLIP G. CLINE,** ) | |
| ) | |
| **Defendant.** ) | |
| ———————————————— ) | |

## MEMORANDUM AND ORDER

Plaintiff Southern Star Central Gas Pipeline, Inc. ("Southern Star") brings this diversity action against Phillip G. Cline seeking a declaratory judgment that its gas storage lease on Cline's property remains in full force and effect. Southern Star additionally alleges that Cline slandered the title to its property by filing a false affidavit declaring the lease was void. Cline brings a counterclaim against Southern Star seeking termination of Southern Star's gas storage lease and the oil and gas lease, and alleging that Southern Star negligently and intentionally inflicted emotional distress. Cline also lists as a separate count a claim for punitive damages.

This matter is before the Court on Southern Star's Motion for Partial Judgment on the Pleadings (Doc. 14). Southern Star seeks a judgment on Cline's claims of negligent and intentional infliction of emotional distress and request for punitive damages. In Cline's Response to Southern Star's motion, he moves for partial judgment on the pleadings, requesting judgment on Southern Star's slander of title claim (Doc. 16).

For the reasons explained below, the Court grants Southern Star's request to dismiss Cline's negligent and intentional infliction of emotional distress claims and the punitive damages

request. The Court denies without prejudice Cline's request to dismiss Southern Star's slander of title claim. Southern Star may file a motion for leave to amend its complaint pursuant to Federal Rule of Civil Procedure 15(a) and D. Kan. Rule 15.1(a)(2).

## I. Standard

The court reviews a Rule 12(c) motion under the same standard that governs a Rule 12(b)(6) motion.[1] To survive a motion to dismiss, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face."[2] Under this standard, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."[3] The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.[4] As the Supreme Court has explained, "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[5] Additionally, "[a] claim has facial plausibility when the plaintiff pleads factual

---

[1]*Ward v. Utah*, 321 F.3d 1263, 1266 (10th Cir. 2003) ("[w]e review a dismissal on the pleadings pursuant to Fed. R. Civ. P. 12(c) under the same standard applicable to a 12(b)(6) dismissal.") (citing *Ramirez v. Dep't of Corr.*, 222 F.3d 1238, 1240 (10th Cir. 2000)).

[2]*Bell Atl. Corp v. Twombly*, 550 U.S 544, 554 (2007).

[3]*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[4]*Robbins v. Oklahoma,* 519 F.3d 1242, 1247-48 (10th Cir. 2008). "'Plausibility' in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Id.* (internal citations omitted).

[5]*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 555, 557).

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[6]  The court need only accept as true the plaintiff's "well-pleaded factual contentions, not his conclusory allegations."[7]

## II.    Background

Unless stated otherwise, the following facts are alleged by the parties in their Complaint and Counterclaim.  The Court will draw all reasonable factual inferences in favor of the non-moving parties.

Predecessors of Southern Star and Cline executed a gas storage and oil and gas lease on property owned by Cline's predecessors in Jefferson County, Kansas.  The lease bound all successors and assigns of the original parties.  The lease entitles Southern Star to an extension of the lease as long as the property is necessary or convenient for its underground natural gas storage field.  Southern Star began using the natural gas storage field approximately sixty years ago.  The disputed leasehold remains an integral part of Southern Star's underground natural gas storage field.

This is the third lawsuit relating to the disputed lease.  The first dispute arose in 1995 when Cline challenged Southern Star's lease by alleging that Southern Star's failure to make rental payments invalidated the lease.  The suit was settled when the parties stipulated that if Southern Star timely made rental payments the lease would remain in effect.  The second dispute arose in 2003.  Cline again challenged the lease's validity, this time asserting that Southern Star's failure to provide free natural gas invalidated the lease.  He also asserted claims of

---

[6]*Id.*

[7]*Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citation omitted).

conversion and intentional infliction of emotional distress. The district court granted summary judgment in favor of Southern Star on all claims, and the Tenth Circuit affirmed.[8] Both courts concluded that the statute of limitations barred the tort claims and that the claims failed on their merits.

Cline now asserts that Southern Star did not timely render the 2005 and 2006 rental payments, voiding its lease. Southern Star asserts that a clerical error delayed Cline's rental payments. When Cline received the 2005 and 2006 rental payments from Southern Star on May 25, 2007, he returned them to Southern Star. Cline asserts that he returned the payments to Southern Star because he considered the lease void. He further alleges that Southern Star gave the checks to the Kansas State Treasury Department without telling the agency that Cline had intentionally returned the checks. Cline has since refused to accept the 2007, 2008, and 2009 rental payments.

After Southern Star failed to pay the 2005 and 2006 rental fees, Cline alleges he sent Southern Star a demand for payment and a notice of eviction. Cline claims that Southern Star told him that it was under no legal or ethical obligation to pay Cline, that Cline had no legal recourse, and that it could pay him whenever it saw fit. Southern Star claims that it told Cline that under the terms of the lease and applicable law, the lease remained in full force and effect and warned him not to pursue a third frivolous lawsuit. On May 1, 2007, Cline filed an affidavit

---

[8]Cline's response to Southern Star's motion for partial judgment on the pleadings relies on Southern Star's reputed refusal to provide him with free gas. *See* Doc 16 at 2–3. However, Cline's previous attempt to allege intentional infliction of emotional distress based on the natural gas and tap charge was rejected by the Tenth Circuit and the district court. *Cline v. S. Star Cent. Gas Pipeline, Inc.*, 191 F. App'x 822 (10th Cir. 2006); *Cline v. S. Star Cent. Gas Pipeline, Inc.*, 356 F. Supp. 2d 1203 (D. Kan. 2005). As a final judgment has been issued on these issues, between these parties, res judicata prevents Cline from relying on the facts already litigated. Thus, Cline's response inappropriately relies on the free gas disputes to validate that Southern Star's conduct was reckless, that the conduct was extreme and outrageous, and that his emotional reaction was extreme and severe. The Court disregards these references to previously litigated facts.

with the Jefferson County Registrar of Deeds that stated that the lease was revoked due to Southern Star's failure to timely make rent payments. Southern Star alleges that Cline filed the affidavit with malice. Southern Star asserts that the cloud on Southern Star's title placed in question the validity of Southern Star's natural gas storage rights.

Cline states that Southern Star's failure to pay its lease obligation caused him intense feelings of helplessness and vulnerability. The emotional feelings Cline experienced aggravated his Post Traumatic Stress Disorder ("PTSD"), which he acquired during his Vietnam combat experience. Cline is considered completely disabled.

Southern Star filed a Motion for Partial Judgment on the Pleadings on August 5, 2010. Southern Star asserts in its accompanying memorandum that Cline did not state a valid claim for negligent infliction of emotional distress and that the intentional infliction of emotional distress claim is barred by the statute of limitations. In the alternative, Southern Star asserts that Cline did not state a valid claim for intentional infliction of emotional distress. Southern Star also requests that the Court deny Cline's request for punitive damages, because such damages cannot be granted absent a valid tort.

In his response to Southern Star's motion, Cline asserts that Southern Star fails to allege sufficient facts to support its slander of title claim. He claims Southern Star did not allege sufficient facts to support that he filed his affidavit maliciously and that the Southern Star failed to allege sufficient damages. Cline moves for dismissal of Southern Star's slander of title claim.

## III.    Discussion

### A.    *Southern Star's Motion for Partial Judgment on the Pleadings*

#### 1.    Negligent Infliction of Emotional Distress

Southern Star first argues that Cline failed to allege sufficient facts to support his claim of negligent infliction of emotional distress because he failed to allege a physical injury. Negligent infliction of emotional distress requires a sufficient physical injury.[9]

Count III of Cline's counterclaim alleges "Emotional Distress Damages," without specifying whether Southern Star acted intentionally or negligently.[10] Southern Star moved for judgment on the pleadings on both claims.[11] Cline asserts in his reply that Southern Star acted with intent and does not dispute that he fails to plead a physical injury.[12] Because Cline fails to plead a physical injury and states that Southern Star acted intentionally, he fails to state a claim for negligent infliction of emotional distress. The Court dismisses Cline's negligent infliction of emotional distress claim.

### 2. Intentional Infliction of Emotional distress

#### a. Statute of Limitations

Southern Star asserts that Cline's intentional infliction of emotional distress claim is barred by the statute of limitations. Southern Star argues the claim accrued no later than May of 2007 and, therefore, is barred by the two-year statute of limitations. Cline does not argue that he filed the suit within the statute of limitations. Rather, Cline argues that the statute of limitations should either be tolled or not enforced. First, Cline asserts the Court should toll the statute because he did not understand his cause of action during the limitations period and thus, was

---

[9]*Grube v. Union Pac. R.R.*, 886 P.2d 845, 848 (Kan. 1994)

[10](Doc. 6 at 8.)

[11](Doc. 15 at 6.)

[12](Doc. 16 at 4.)

legally incapacitated.  Second, Cline asserts that enforcing the statute of limitations against him would lead to "an intolerable perversion of justice."

Because Cline does not dispute that he filed his claim beyond the two-year statute of limitations, if the Court concludes he does not suffer from legal incapacitation and that justice is not dis-served by enforcing the statute, Cline's intentional infliction of emotional distress claim is barred by the statute of limitations.

Generally, a plaintiff must bring a claim for intentional infliction of emotional distress within two years of the conduct causing substantial injury.[13]  However, if an individual successfully asserts legal incapacity, Kansas law states the individual must file any suit within one year of the disability's removal.[14]  Kansas law defines an incapacitated person as one who is unable to receive and evaluate information to the degree that the person cannot manage his own estate.[15]  A party claiming legal incapacity must assert sufficient facts in his complaint to justify tolling the statute.[16]  Without sufficiently pled facts, the party is presumed to be a person of legal capacity.[17]

Cline asserts that he did not fully understand his cause of action, thus, the Court should toll the statute of limitations.[18]  Cline's Complaint did not allege that the impairment created by

---

[13]*Hallam v. Mercy Health Ctr. of Manhattan, Inc.*, 97 P.3d 492, 497 (Kan. 2004) (interpreting K.S.A. § 60-513(a)(4)).

[14]*Lowe v. Supras Res. Corp.*, 253 F. Supp. 2d 1209, 1249 (D. Kan 2003) (interpreting K.S.A. §§ 60-515 and 77-201(31)).

[15]K.S.A. § 77-201(31).

[16]*See Seymour v. Lofgreen*, 495 P.2d 969, 974 (Kan. 1972).

[17]*Id.*

[18](Doc. 16 at 6.)

his PTSD rose to the level of legal incapacity. Additionally, Southern Star argues that during Cline's reputed incapacity in 2005, Cline was represented by counsel and was in the process of appealing the 2003 case against Southern Star.[19] Further, Cline alleges in his Counterclaim that, beginning in December 2005, he sent letters to Southern Star which stated that the lease was void and its property was abandoned.[20] Rather than prove Cline lacked the capacity to manage his own estate, even his own allegations, taken as true, demonstrate that Cline was well aware of his legal recourse against Southern Star. Additionally, Cline argues in this reply that he knew he had not received rental payments and that he would have to hire an attorney to defend his rights under the lease.[21] Construing all reasonable factual inferences in favor of Cline, the facts demonstrate that Cline had the requisite ability to manage his own estate. Cline has not pled sufficient facts to enable the Court to find Cline is a person of legal incapacity such that the statute should be tolled.

Cline additionally argues that the Court commits an "intolerable perversion of justice" by enforcing the statute of limitations in light of his PTSD.[22] Cline relies on two non-binding cases that do not apply Kansas law. Both are easily distinguished from the facts at hand. Cline relies first on *Hammer v. Hammer*.[23] In *Hammer,* the plaintiff suffered incestuous abuse and coped with the trauma by ignoring the resulting distress.[24] Thus she did not discover her mental injury

---

[19](Doc. 6 at 1.)

[20]*See* Doc. 6 at 18-20 (letters sent by Cline to Southern Star asserting its lease was void).

[21](Doc. 16 at 6.)

[22](Doc. 16 at 6.)

[23]418 N.W.2d 23 (Wis. Ct. App. 1987).

[24]*Id.* at 25.

until eight years after the initial injury.[25]  There are no facts alleged by Cline to support a similar

delay in realizing his mental injury.  Cline cites *Simmons v. United States*,[26] for his argument that

courts "dismember" the statute of limitations for persons suffering from PTSD.  However, in

*Simmons,* the tortious conduct caused the patient's PTSD.[27]  Further, the plaintiff did not know

the unethical sexual relationship at issue caused her mental condition until three months before

she filed suit.[28]  In sharp contrast, Cline in his own Complaint states that he knew Southern Star

caused him emotional distress.  Thus, unlike both cases Cline cites, he knew both that he was

injured and that Southern Star caused the injury.  Cline cites no other legal authority for his

proposition that the Court commits an intolerable perversion of justice by enforcing the statute of

limitations.  Viewing the facts in the light most favorable to Cline, the Court cannot conclude

that an intolerable perversion of justice is committed if the statute of limitations is enforced.  As

Cline did not attempt to argue he filed his suit within the two year statue of limitations and no

basis exists to justify tolling the statute, Cline's claim of intentional infliction of emotional

distress is dismissed.

      **b.**    **Merits**

      Even if the statute of limitations did not bar the claim, Southern Star argues that Cline

has failed to sufficiently allege facts that give rise to a claim for intentional infliction of

emotional distress.  Southern Star asserts that Cline failed to allege conduct that was extreme and

_____

[25]*Id.*

[26]805 F.2d 1363 (9th Cir. 1986).

[27]*Simmons v. United States*, 802 F.2d 1363, 1367 (9th Cir. 1986).

[28]*Id.* at 1364.

outrageous and that the emotional distress Cline suffered was not extreme and severe.

Intentional infliction of emotional distress comprises four elements: (1) the challenged conduct was intentional or performed with reckless disregard for the plaintiff; (2) the conduct was extreme and outrageous; (3) a causal connection exists between the conduct and the plaintiff's mental distress; (4) the plaintiff's mental distress was extreme and severe.[29] There is no dispute that Cline correctly alleged Southern Star acted with intent or reckless disregard and that its conduct caused Cline's feelings of helplessness and distress.[30]

Southern Star asserts that its failure to timely pay $80 worth of lease payments does not rise to the level of extreme and outrageous conduct. In response to this assertion, Cline argues that an average member of the community would find it outrageous that a large corporation would treat a disabled veteran poorly. Conduct is extreme and outrageous when it "goes beyond the bounds of decency and is utterly intolerable in a civilized society."[31] Such conduct would "arouse resentment against the actor."[32] Mere trivialities, inconveniences, and annoyances are not sufficient for the Court to consider conduct extreme and outrageous.[33]

Southern Star asserts that its conduct does not rise to the level of extreme and outrageous, citing a number of cases in which courts applying Kansas precedent have concluded conduct was not extreme and outrageous. These include: an instance where a lawyer settled a claim without

---

[29]*Roberts v. Saylor*, 637 P.2d 1175, 1179 (Kan. 1981).

[30](Doc. 15 at 8.)

[31]*Roberts*, 637 P.2d at 1179.

[32]*Id.*

[33]*Id.*

consulting a client,[34] a mortgage holder disposed of a mortgagee's personal property,[35] and a physician diagnosed a patient with cancer when he had conducted no tests.[36] More recently, in *Lovitt ex rel. Bahr v. Board of County Commissioners of Shawnee County*,[37] the Kansas Court of Appeals denied recovery when a woman suffered a seizure while driving, causing the car to veer off the road and strike a street sign.[38] The child, who was in the car with her, called 911 and the dispatcher accused the child of filing a false report and hung up without sending assistance.[39] The Kansas Court of Appeals affirmed the district court's finding that the conduct was not extreme and outrageous. Given that the actions in these cases did not constitute extreme and outrageous conduct, it follows that failing to pay $80 worth of rent payments, is similarly not extreme and outrageous conduct. Even if Southern Star intentionally failed to send Cline the rent checks, these actions do not rise to the level of extreme conduct required by Kansas courts. Instead, Southern Star's conduct constitutes a mere triviality, inconvenience, and annoyance. Further, Cline cites no authority for his argument that his status as a veteran lowers the bar of extreme and outrageous conduct, nor does he cite any authority for his theory that large corporations should be held to a higher standard of conduct. Construing the facts in the light most favorable to Cline, Southern Star's conduct does not rise to the level of extreme and outrageous.

[34]*Miller v. Sloan, Listrom, Eisenbarth, Sloan & Glassman*, 978 P.2d 922 (Kan. 1999).

[35]*Fusaro v. First Family Mortg. Corp.*, 897 P.2d 123 (Kan. 1995).

[36]*Ferguson v. Kellstadt*, 175 P.3d 281, 2008 WL 307488 (Kan. Ct. App. Feb. 1, 2008) (unpublished).

[37]221 P.3d 107 (Kan. Ct. App. 2009).

[38]*Id.* at 110.

[39]*Id.*

Next, Southern Star argues that Cline's emotional distress does not rise to the level of extreme and severe. Cline counters by asserting that he has suffered long-term stress associated with litigation in addition to feelings of helplessness and vulnerability.[40] He additionally argues that Southern Star is a large company which misrepresents itself as a friendly company, but subsequently denies a veteran his rental payments. The emotional distress experienced by the plaintiff must be extreme and severe to be compensable.[41] In general, feelings such as worry, nervousness, and embarrassment do not satisfy the extreme and severe distress requirement.[42]

Cline's emotional symptoms of helplessness, vulnerability, and stress closely resemble the types of emotional symptoms the Kansas Supreme Court recently reiterated are inadequate to meet the requirement of severe and extreme distress.[43] The Kansas Supreme Court stated that, in general, feelings of stress, fear, and anxiety are insufficient to warrant recovery for intentional infliction of emotional distress.[44] Accepting as true that Cline is experiencing feelings of helplessness, vulnerability, and stress, Kansas law does not regard these symptoms as extreme and severe. Without more, these emotional reactions are not so severe that no reasonable person should be expected to endure them.[45] Cline's emotional distress lacks adequate severity.

---

[40](Doc. 6 at 9; Doc. 16 at 3.)

[41]*Valadez v. Emmis Commc'ns*, 229 P.3d 389, 395 (Kan. 2010)

[42]*Id.*

[43]*Id.*

[44]*See id* (stating that "elevated fright, continuing concern, embarrassment, worry, and nervousness are inadequate" and "irritability, anxiety, depression, [and] listlessness" are not sufficient emotions to meet the requirements of intentional infliction of emotional distress (quotation omitted)).

[45]*See Taiwo v. Vu*, 822 P.2d 1024, 1029 (Kan. 1991) (stating that, to be extreme and severe, emotional reactions to egregious conduct must be so severe that "no reasonable person should be expected to endure [them]").

Therefore, even if the Court accepts as true Cline's factual allegations, he has not pled conduct rising to the level of extreme and outrageous nor has he pled emotions constituting extreme and severe distress. Cline's intentional infliction of emotional distress claim fails on its merits in addition to being barred by the statute of limitations.

### 3. Punitive Damages

Southern Star asserts that, absent a viable tort, the Court must also dismiss Cline's punitive damages claim. Cline asserts that Southern Star sent the rental checks to the State Treasurer without informing the Treasurer that Cline had refused the payments, which justifies punitive damages. In the absence of a tort, there is no basis for punitive damages.[46] Because the Court dismisses Cline's intentional infliction of emotional distress claim, no basis remains to award punitive damages. In his Counterclaim Cline does state that Southern Star's return of the checks was fraudulent.[47] However, Cline does not list fraud as a separate count, nor does he plead fraud with sufficient particularity.[48] As no valid tort is alleged, Cline cannot maintain his claim for punitive damages.

### B. *Cline's Motion for Partial Judgment on the Pleadings*

Cline asks the Court to dismiss Southern Star's claim for slander of title, stating that Cline did not file his affidavit with malice and that Southern Star failed to allege special damages. Slander of title is defined as a "false and malicious statement . . . made in

---

[46]*Farrell v. Gen. Motors Corp.*, 815 P.2d 538, 549 (Kan. 1991).

[47](Doc. 6 at 10).

[48]*See* Fed. R. Civ. P. 9(b); *Nelson v. Nelson*, 205 P.3d 715, 725–26 (Kan. 2009).

disparagement of a person's title . . . causing him injury."[49]  A defendant's statement is malicious when the harmful act is committed without a reasonable justification.[50]

Cline contends that he filed his affidavit without malice.  Southern Star asserts that it informed Cline that its storage lease remained valid and warned him not to file frivolous claims. Southern Star also alleges in its Complaint that it informed Cline that he had not taken the necessary steps to invalidate the lease; namely, Cline failed to notify Southern Star of the late payment, or to demand payment and then have Southern Star refuse to make the rental payment. Thus, construing the facts in the light most favorable to Southern Star, it is plausible Cline knew he had no legal right to invalidate the lease.

Southern Star's Complaint alleges Cline damaged Southern Star by "placing in question the validity of Southern Star's valuable gas storage rights."[51]  A slander of title claim requires that a plaintiff suffer special damages.  A plaintiff has suffered sufficient injury when he suffers actual economic harm.[52]  Accepting as true that Southern Star's natural gas storage rights were called into question, Southern Star has not alleged actual economic harm.  Therefore, Southern Star has failed to sufficiently plead slander of title.

In its reply, Southern Star requests leave to amend its Complaint to allege special damages.[53]  Federal Rule of Civil Procedure 15(a)(2) gives district courts the discretion to allow

---

[49]*Safety Fed. Sav. & Loan Ass'n v. Thurston*, 648 P.2d 267, 270 (Kan. Ct. App. 1982) (citing 50 Am. Jur. 2d, Libel & Slander § 539).

[50]*Saddlewood Downs, L.L.C. v. Holland Corp.*, 99 P.3d 640, 649 (Kan. Ct. App. 2004)

[51](Doc. 1 at 7.)

[52]*See Saddlewood Downs*, 99 P.3d at 649 (upholding trial court's determination that the plaintiff did not suffer actual damages and thus had insufficient damages).

[53](Doc. 19 at 8.)

leave to amend "as justice requires."[54]  If the underlying facts present a valid claim for relief,

courts should allow the claim to be heard on its merits.[55]  In this case, there is no evidence that

Southern Star's amendment would be futile, create undue delay, or that the error was made in

bad faith.[56]  However, Southern Star's request to amend was not filed in accordance with the

local rule, which requires an accompanying proposed amended Complaint.[57]  Thus, the Court is

not prepared to grant Southern Star's request for leave to amend at this time.  Southern Star may

file a motion for leave to amend in accordance with Federal Rule of Civil Procedure 15 and D.

Kan. Rule 15.1 on or before November 24, 2010.

**IT IS THEREFORE ORDERED BY THE COURT** that Southern Star's Motion for

Partial Judgment on the Pleadings (Doc. 14) is GRANTED.  Cline's counterclaims for negligent

infliction of emotional distress, intentional infliction of emotional distress, and his request for

punitive damages are dismissed.

**IT IS FURTHER ORDERED BY THE COURT** that Cline's Motion for Partial

Judgment on the Pleadings (Doc. 16) is DENIED without prejudice.  Southern Star may file a

motion for leave to amend in accordance with Federal Rule of Civil Procedure 15 and D. Kan.

Rule 15.1 on or before November 29, 2010.

**IT IS SO ORDERED.**

Dated: <u>November 16, 2010</u>

                                     <u>S/ Julie A. Robinson</u>

---

[54]Fed. R. Civ. P. 15(a)(2).

[55]*Foman v. Davis*, 371 U.S. 178, 182 (1962).

[56]*See id.*

[57]D. Kan. R. 15.1(a)(2) (stating the amended document must be attached to the motion for leave to amend).

JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE